## MRS. MAMIE L. MARKS v. J. L. ROSENBLOOM.

Western Section.   February 5, 1926.

Ne petition for Certiorari was filed.

1. **Gifts. Parol gift of real estate is voidable at any time within seven years.**
   Possession of real estate under a parol gift for seven years will perfect a defense under Shannon's Code, section 4458, but donor may revoke gift any time prior thereto.

2. **Gifts. Ejectment is repudiation of parol gift.**
   The action of ejectment is a repudiation of the parol gift of real estate but the action must be brought within the time limited by statute.

Appeal from Chancery Court, Madison County; Hon. Thos. C. Rye, Chancellor.

Affirmed and remanded with direction.

Bond & Bond, of Jackson, for appellant.

S. J. Everett, of Jackson, for appellee.

OWEN, J.   The complainant, Mrs. Mamie L. Marks, the widow of Louis Marks, instituted an ejectment suit to recover a small lot lying in the fourth ward of the city of Jackson, Madison county, Tennessee, situated in the rear of the lot owned by Mrs. Rachel Rosenbloom, one of the defendants to this litigation. The lot in dispute is 52½x45½ feet in size. The bill was first filed against J. L. Rosenbloom, it being insisted that he had taken possession of the lot by the consent of complainant, but he was only to use the lot for a garden, and during the pleasure of complainant; that complainant, shortly before filing her bill, left Jackson for a visit to Dawson Springs and upon her return home discovered that the defendant Rosenbloom had built a servant's house upon the com-

plainant's lot. Thereupon she gave J. L. Rosenbloom, one of the defendants and the husband of Mrs. Rachel Rosenbloom, written notice, notifying that he could no longer occupy said lot as tenant, or otherwise.

Complainant filed her bill February 6, 1922. The defendant answered and insisted that the complainant had given the lot to defendant's wife, Mrs. Rachel Rosenbloom, and that his wife had been in possession of the lot for more than seven years prior to filing complainant's bill. An amended and supplemental bill was filed March 3, 1922, making Mrs. Rachel Rosenbloom a party. Mrs. Rosenbloom answered, and by her answer it is insisted that she and her husband, and especially she had been in adverse possession of said lot, holding the same adversely, for more than seven years before the commencement of complainant's suit, and that she held the same by reason of a parol gift of said lot, and she had held under the same for more than seven years prior to the bringing of this suit. She therefore pleads the statute of limitation against any right or claim of complainant.

With the issues thus formed from the pleadings, a number of depositions were taken and upon the hearing before Chancellor Rye he sustained complainant's bill holding that the defendants in their answers claimed ownership in said lot as a gift from complainant, and also pleading the statutes of limitation and the burden of proof rested upon them to establish these affirmative pleas by a preponderance of the evidence, they failed to meet the requirements of the law, and a decree was entered granting complainant a recovery of the lot. The defendants excepted to this decree, prayed and were granted an appeal to this court, perfected the same and assigned error as follows:

"The Chancellor was in error in decreeing in favor of complainant; that she is entitled to recover of defendants the lot in controversy, and the complainant was the owner in fee of same."

The complainant insists that this is not a good assignment under the rules of this court, but we will treat the same as being a proper assignment.

The facts, briefly stated, are as follows: Louis Marks, the husband of the complainant, died some two or three years before the institution of this suit. He was the uncle of the defendant, Mrs. Rachel Rosenbloom, she being the daughter of Philip Marks, a brother of Louis Marks. Philip Marks died sometime after the institution of this suit. No children were ever born to Louis Marks and complainant. In about 1911 Louis Marks purchased a lot on the east side of Highland avenue, which avenue runs north and south. Title was taken to this lot in the complainant. This lot was purchased from one Hendrix and had a frontage on Highland avenue of 52 feet, and extended back between right angles 150 feet

east to an alley, the alley being 10 feet in width. Fifty-two feet north of complainant's northeast corner was Hale street, which runs east and west, intersecting with Highland avenue. The fifty-two feet between Hale street and complainant's lot was owned by one Nord. At the time complainant and her husband purchased the lot fronting on Highland avenue she purchased two lots east of the Highland avenue lot, the first lot fronting 117 feet on Hale street, and being on the south side of Hale street, and extending south 156 feet. Just south of complainant's lot on Highland avenue, shortly after she made her purchase, the defendant, Rachel Rosenbloom purchased a lot fronting on Highland avenue 52 feet and extending back 150 feet to an alley. Thus it will be seen that the depth of complainant's lot fronting north on Hale street is the same as the width of the three lots of Nord, complainant and Rosenbloom, to-wit: one hundred fifty-six feet; but there was an alley from Hale street extending south, which alley was in the rear of the Nord property, complainant's Highland avenue lot and the defendant's lot. Complainant's husband and the defendant Rosenbloom were both successful merchants in Jackson, Tennessee, and it appears that both purchased the lots on Highland avenue for residence, and saw fit to have title to said lots placed in their respective wives. In 1914 both the Marks and Rosenblooms began to erect homes on their Highland avenue lots, the same contractors erecting both residences. The Marks residence was finished about the first of May, 1915, and Louis Marks and his wife, the complainant, moved from their home on Deaderick street to their new home on Highland avenue. The Rosenbloom home was finished some three or four months after the Marks' residence, and the Rosenblooms moved into their new home. It is insisted by the defendants that they didn't want to buy the lot on Highland avenue which they did purchase, getting the same from T. J. Murray, Sr., a member of the Jackson bar, and which lot is just north of the home of Mr. Murray, who is now deceased; that the defendants insisted the lots did not have proper depth; that they would need a garden. Thereupon the complainant and her husband who had great love for the defendant Rachel Rosenbloom gave to Mrs. Rosenbloom the lot in the rear of the Rosenbloom home, and which was to be a lot about 50x50 feet, for a garden; that they would never have purchased the Murray lot if this inducement had not been made to the defendants; that Mrs. Marks, the complainant, wanted to have Mrs. Rosenbloom, the defendant, near the complainant; that the husbands of both complainant and defendant worked in stores at night, and they would be company for each other, especially would Mrs. Rosenbloom be company for and a comfort to Mrs. Marks. It appears that this love and affectionate feeling came to an end after

the death of Louis Marks, the family ties were broken, and the relations became very strained.

Complainant insists that she consented for the defendants to use the lot in controversy for a garden during her will and pleasure, and that the defendants did not enter into possession until the spring of 1916, and that she did not know that the defendants tried to exercise ownership and claim title to the property until the servant's house was erected on the lot in the fall of 1921. The records shows that after Mrs. Marks filed her bill and after she and some of her witnesses testified, the defendant Rosenbloom moved the house from the lot in dispute on to his own or his wife's property. His insistence is that he put the servant's house on the lot in controversy because he didn't want it so near to his residence, and then he moved the servant's house off of the lot in controversy because it would shade his garden.

A number of defendant's relatives testified that they heard Louis Marks say that he was giving the garden to defendants. Some of these witness state that Mrs. Mamie Marks, the complainant was present when her husband made this statement and that she did not say "yea" nor "nay" to his statement,—while some of the witnesses have the statement coming from Mr. Louis Marks in the absence of the complainant.

Mrs. Mary Marks, who also lives on Highland avenue near to the complainant and defendant, and who is the widow of Philip Marks and the mother of the defendant, Mrs. Rosenbloom testified that she heard the complainant and her husband, Louis Marks, say many times that they were giving defendants the lot in controversy. She was asked: "Q. Please state what you heard them state in reference to this lot?" This question was objected to on the ground that anything Louis Marks may have said in reference to this lot was incompetent, because Louis Marks was not the owner of the property. Mrs. Mary Marks answered as follows: "That we give you the lot, 50 feet, that is all I heard them say, We give 50 foot lot in the back."

It appears further that the complainant always paid the taxes on this lot in controversy, and the defendants paid no taxes. We further find from the record that soon after the garden was made, the defendant, Mrs. Rachel Rosenbloom desired to have a small henhouse erected on this lot, and she consulted the complainant as to where to place the henhouse, and complainant suggested where the henhouse should be erected. No deed was ever executed, and none was asked for by the defendants. The defendants own other real estate, and we are of opinion that the fact that no deed was executed is a strong circumstance in favor of complainant's contention that she never did give the property to the defendants. The shape of the lot, and size, is another circumstance:—that is,

to cut this small portion, 52½x45½ feet out of complainant's lot, fronting 117 feet on Hale street, would greatly depreciate the value of the lot owned by complainant on Hale street.

While we have a number of cases decided by the Supreme Court of Tennessee which hold that the possession of a parol vendee is for himself, and that seven years of such possession will perfect a defense under Section 2 of the Acts of 1819, Shannon's Code, section 4458 (Inman v. Tucker, 138 Tenn., 559; Bakerfield v. Anderson, 87 Tenn., 209; Ellege v. Cook, 5 Lea, 622), but the parol gift is voidable and can void a gift at any time within seven years. The statute runs against the right of repudiation. The action of ejectment is a repudiation of the parol gift, but the action must be brought within the time limited by statute. Choate v. Sewell, 142 Tenn., 493.

We are of opinion, from the facts in this case, that the complainant has sustained her contention, and the defendants have failed to sustain their two pleas. Complainant never intended, in our opinion, to give the lot to the defendants, and if a gift should have been established she repudiated the same within less than seven years after the defendants took possession.

It results that we find no error in the decree of the Chancellor, defendants assignment of error is overruled and disallowed, and the decree of the Chancellor is in all things affirmed. The complainant will recover of the defendants and surety on appeal bond all costs accrued in the lower court and also costs of appeal, for which execution will issue.

The cause will be remanded to the chancery court of Madison county, if desired, for the purpose of issuing a writ of possession in favor of complainant for the lot sued for.

Heiskell and Senter, JJ., concur.